**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **HAVTECH, LLC,** | * |
| Plaintiff, | * |
| v. | * Case No.: GJH-18-1139 |
| **ALLEGHENY ENGINEERING CO.,** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

In this case, Plaintiff Havtech seeks to recover from Defendant Allegheny Engineering Co. ("AEC") to recover for an alleged breach of contract or, alternatively, in *quantum meruit* and for unjust enrichment. ECF No. 2. Pending before the Court is Defendant's Motion to Dismiss. ECF No. 10. Plaintiff filed an Opposition, ECF No. 12, and Defendant replied, ECF No. 13. No hearing is necessary. *See* Loc. R. 105.6. For the following reasons, Defendant's Motion to Dismiss will be denied.

**I.      BACKGROUND[1]**

Havtech is a limited liability company organized and existing under Delaware law with its principal place of business in Howard County, Maryland. ECF No. 2 ¶ 1. The company markets and sells commercial heating, ventilation, and air-conditioning (HVAC) equipment. *Id.* AEC is also in the business of marketing and selling commercial HVAC equipment. ECF No. 2 ¶ 2. It is a business corporation organized and existing under Pennsylvania law and its principal place of business is in McMurray, Pennsylvania. *Id.*

---

[1] Unless otherwise noted, this background is taken from the Complaint's well-pleaded facts and accepted as true. ECF No. 1.

Havtech works with "building owners, contractors, and mechanical engineers to select, package and configure HVAC equipment components for project-specific applications" at which point it will often sell the equipment package to the purchaser. ECF No. 2 ¶ 3. Because Havtech and its competitors have designated sales territories, sometimes Havtech takes the first step of working with a purchaser to market an equipment package, but will not take the second step of making the sale because the purchaser is located outside of Havtech's sales territory. ECF No. 2 ¶ 4. When this situation occurs, it is known within the HVAC equipment industry as a "split commission sale." ECF No. 2 ¶ 5–6. Havetech alleges that "it is custom and practice in the HVAC equipment sales business that when a split commission sale is made (i.e., when one businesses has marketed a package that is sold to a purchaser who is in another vendor's sales territory), the vendor who gets the sale pays a designated percentage of the gross profit to the entity who marketed the package." ECF No. 2 ¶ 5.

Havtech and AEC are both parties to separate agreements with Daikin Applied Americas, Inc. (Daikin), an HVAC equipment manufacturer. ECF No. 2 ¶ 5, 7. Under these agreements, Havtech and AEC are authorized to sell Daikin equipment to purchasers in their designated sales territory. *Id.* Specifically, AEC is authorized to sell Daikin equipment to purchasers in Western Maryland. ECF No. 2 ¶ 7.

Havtech and AEC follow the industry's practice when they are parties to a split commission sale; if Havtech markets a package that AEC sells in its sales territory, AEC pays a percentage of the sale's gross profits to Havtech, and vice versa. ECF No. 2 ¶ 8. However, after AEC made two recent split commission sales of Daikin equipment that Havtech had marketed, it failed to pay Havtech. ECF No. 2 ¶ 9–15. First, Havtech marketed Daikin equipment to a purchaser working a construction project in AEC's sales territory of Western Maryland known as

Alleghany High School Replacement. ECF No. 2 ¶ 10. AEC ultimately sold the Daikin equipment package to the Western Maryland based purchaser. *Id.* Based upon industry custom, the parties' prior course of dealing, and an explicit understanding, AEC was to pay Havtech $128,412.00 for Havtech's marketing efforts on the Alleghany High School Replacement project. ECF No. 2 ¶ 11. According to the Complaint, "AEC has acknowledged that it owes Havtech the $128,412.00, but it has not made payment, which is now past due and owing." ECF No. 2 ¶ 12.

Havtech's marketing efforts also resulted in a split commission sale of Daikin equipment by AEC in Western Maryland for a project known as Hancock Middle/High School HVAC Replacement. ECF No. 2 ¶ 13. For this split commission sale, AEC was to pay Havtech $154,844.00. ECF No. 2 ¶ 14. AEC has allegedly acknowledged that it owes Havtech this commission but has not paid it despite it being "now past due and owing." ECF No. 2 ¶ 15.

## II. STANDARD OF REVIEW

Defendant has moved to dismiss Plaintiff's Complaint on the ground that it fails to state a claim upon which relief can be granted. When deciding a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435. 440 (4th Cir. 2011) (citations and internal quotation marks omitted). Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But to survive a motion to dismiss invoking Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662. 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550

U.S. 544. 570 (2007)). The factual allegations must be more than "labels and conclusion . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *See id.* at 679 (citing Fed. Rule Civ. Proc. 8(a)(2)).

## III. DISCUSSION

### A. Breach of Contract (Count I)

To survive a motion to dismiss a breach of contract claim under Maryland law, a plaintiff must allege facts showing that the defendant materially breached a contractual obligation owed to the plaintiff. *See Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). A contractual obligation may exist under an implied-in fact contract—an agreement that exists based "on some act or conduct of the party sought to be charged and arising by implication from circumstances which, according to common understanding, show a mutual intention on the part of the parties to contract with each other." *Mogavero v. Silverstein*, 142 Md. App. 259, 277 (2002) (internal citations omitted). "A true implied contract, or contract implied in fact, does not describe a legal relationship which differs from an express contract: only the mode of proof is different." *Id.* Thus, a plaintiff's breach of contract claim can survive a motion to dismiss if the Complaint properly alleges that an agreement can be inferred from the circumstances. *Id.* An allegation indicative of an implied-in-fact contract includes that services were rendered "to indicate that the

4

person rendering them expected to be paid therefor, and that the recipient expected, or should have expected, to pay for them." *Id.* A plaintiff must also allege details about the "intentions of the parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding of men" from which an agreement can legitimately be inferred. *Thomas v. Capital Med. Mgmt. Assocs., LLC*, 189 Md. App. 439, 459 (2009).

Here, Plaintiff has sufficiently alleged that an implied-in-fact contract exists between the parties and that Defendant materially breached its contractual obligations. Specifically, Plaintiff alleges that in the parties' ordinary course of dealing, when a split commission sale is made—where one business has marketed an equipment package that is ultimately sold to a purchaser outside the company's sales territory—the vendor who makes the sale pays the company a commission for its marketing services. ECF No. 2 ¶ 5. From these circumstances, the Court can infer that the parties intended to agree to pay a percentage of their profits to each other when a split sale commission occurs. As alleged, however, Defendant failed to pay Plaintiff this commission in two specific instances, *id.* ¶¶ 9–15, where Plaintiff had rendered marketing services expecting to be paid and knowing that Defendant "expected, or should have expected to pay for" the services. 142 Md. App. at 277. According to the Complaint, Defendant expected or should have expected to pay for Plaintiff's marketing services because such payment would accord with industry custom, ECF No. 2 ¶ 6, the practice between the parties, *id.* ¶ 8, and AEC acknowledged that it owes Havtech for two split commission sales, *id.* ¶¶ 12, 15.

Defendant claims that it "is not aware of any contract between the parties regarding the equipment of sales that are the subject of the Complaint," ECF No. 10-1 at 4, but at this stage in the litigation the Court assumes the truth of the facts alleged in the Complaint. Defendant's additional argument that Plaintiff's allegations are too vague and do not identify the terms of a

5

contract, *id.* at 4–5, also fails. Plaintiff has identified the terms of the alleged implied-in-fact contract: where Havtech markets a package that results in an AEC sale within Western Maryland, AEC pays a percentage of the sale's gross profits to Havtech. ECF No. 2 ¶ 8.

For all of these reasons, the Court will deny Defendant's Motion to Dismiss Plaintiff's breach of contract claim.

### B. Quasi-contract Claims (Count II and Count III)

In the alternative, if no implied-in-fact contract existed between the parties, Plaintiff alleges that it is entitled to recover quasi-contract remedies—*quantum meruit* or unjust enrichment. "Quasi-contract remedies are equitable remedies that permit recovery, 'where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise.'" *County Commissioners v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94 (2000). These remedies are not available where a contract exists, but "parties may plead alternative theories of liability, indeed as many theories as the facts will fit." *Swedish Civil Aviation Admin. v. Project Mgmt. Enterprises, Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002).[2]

To state a Maryland common-law claim for recovery of either *quantum meruit* or unjust enrichment, a plaintiff must allege "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Swedish Civil Aviation Admin. v. Project Mgmt. Enters.*, 190 F. Supp. 2d 785, 792-93 (D. Md. 2002). The elements of

---

[2] Defendant's argument that Plaintiff's claims are duplicative and should be dismissed on that basis, ECF No. 10-1 at 4, is thus without merit.

these quasi-contract remedies differ from a breach of contract claim in that a plaintiff need not allege facts related to the parties' intent to enter into an agreement.

Plaintiff alleges that it conferred a benefit upon Defendant: it marketed Daikin equipment packages to purchasers in Defendant's sales territory, which, according to the Complaint, resulted in Defendant making two split sale commissions. ECF No. 2 ¶¶ 9–15. The Complaint also alleges facts that show "appreciation or knowledge" by AEC of the benefit—AEC apparently acknowledged that it owed Havtech a percentage of the profits from these two split sale commissions. ECF No. 2 ¶¶ 12, 15. Based on these facts, it would be unjust to allow Defendant to walk off with the reasonable value of Plaintiff's services without paying for them. Thus, even if Plaintiff fails to prove at a later stage of the litigation that a contract existed between the parties and included terms about how to handle split sale commissions, Plaintiff may still be able to recover for the marketing services rendered through a *quantum meruit* or unjust enrichment theory of recovery.

Because Plaintiff has alleged sufficient facts to state plausible quasi-contract claims, Defendant's Motion to Dismiss Counts II and III is denied; however, because they require proof of the same elements, the claims will be consolidated as Count II.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is denied. A separate Order shall issue.

Date: <u>December 4, 2018</u>                                        /s/
                                                                                GEORGE J. HAZEL
                                                                                United States District Judge